UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                     Case No. 2:03:CR:22-01

GARY PAUL PHILLIPS,                        HON. GORDON J. QUIST

        Defendant.
_____/

**FINDINGS OF VIOLATION**

        Defendant, Gary Paul Phillips, was charged by his Probation Officer, Ms. Tonika Cooper, with having violated a term of his supervised release by using cocaine while on supervision. During his supervised release, Mr. Phillips tested positive for use of cocaine through a sweat patch test. Mr. Phillips denied using cocaine while on supervision and challenged the accuracy of a PharmChem sweat patch test. The Court held a hearing and heard witnesses, including Mr. Phillips. Mr. Phillips also submitted an "APPENDIX A to Comments of National Federation of Federal Employees, Drug Policy Alliance, and DKT Liberty Project regarding Proposed Revisions to Mandatory Guidelines for Federal Workplace Drug Testing Program, FR DOC # 04-7984, SAMHSA, HHS; <u>THE SCIENTIFIC ISSUE: HOW ACCURATE ARE POSITIVE SWEAT PATCH TEST RESULTS AS AN INDICATOR OF RECENT DRUG USE BY THE TEST SUBJECT?</u>

        In *United States v. Myers,* 483 F.3d 865 (8th Cir. 2007), the court found that the PharmChem sweat patch test is, generally, a reliable test for the detection of cocaine metabolite and use of cocaine.

        The Court finds the facts as follows:

1. Ms. Tonika Cooper, Mr. Phillips' probation officer, followed appropriate protocol in applying and removing the sweat patch for Mr. Phillips. She swabbed the patch area twice with alcohol, took the patch out of a sterile package, applied the patch and sealed it to Mr. Phillips' skin with waterproof tape, and then sent the patch in a package with identifying bar codes to Clinical Reference Laboratory, the company that checks the patch. Testimony of Tonika Cooper.

2. Clinical Reference Laboratory has no formal business ties with PharmChem, the manufacturer of the sweat patch, other than purchasing and sale of the patches. Testimony of Dr. David Kuntz.

3. Clinical Reference Laboratory tested Mr. Phillips' sweat patch in its laboratory pursuant to established procedures that ensure that there will be no contamination of the patch before or during the test. *Id*.

4. Clinical Reference Laboratory's test showed the presence of cocaine metabolite in Mr. Phillips' patch. The existence of the cocaine metabolite indicated that there had been cocaine in Mr. Phillips' body which had been metabolized by his body's ordinary chemical and physical functioning.

5. Mr. Phillips presented no evidence of outside contamination. Mr. Phillips presented no evidence as to why his sweat patch could have tested positive for the presence of cocaine metabolite.

6. A urine test can discover the ingestion of cocaine for about 24 to 48 hours from the time of ingestion, and a sweat patch can detect the use of cocaine, through cocaine metabolite, for about seven days from ingestion. So, simply passing urine tests does not indicate that there was no ingestion of cocaine because the ingestion could have occurred between three or, roughly, seven days before the test. Dr. David Kuntz.

As to the so-called "Appendix A" submitted by defendant, this document does not cast doubt upon the accuracy of a PharmChem sweat patch in detecting the presence of cocaine metabolite in a person. The National Federation of Federal Employees is, as its name asserts, a union of federal employees, one of whose major goals is the preservation of employment for federal employees. There is a patent bias. In addition, most of the report criticizes the use of a sweat patch because a sweat patch often shows the ingestion of cocaine when a urine test does not. Dr. Kuntz explained why this is the case. Another part of this report says that a sweat patch can be subject to outside pollutions. There was no evidence of outside pollution in this case.

## Conclusion

Mr. Phillips is guilty of having used cocaine in violation of his supervised release.


Dated: November 10, 2016                             /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE